UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Athina Karahogitis,<br><br>        Plaintiff,<br><br>v.<br><br>TPUSA, Inc. d/b/a Teleperformance USA,<br>DOES 1-20,<br><br>        Defendants. | Case No. 4:24-cv-00706 |

**COMPLAINT**

Plaintiff, Athina Karahogitis ("*Plaintiff*"), files this Complaint against Defendants, TPUSA Inc. d/b/a Teleperformance USA ("*Teleperformance*") and Does 1-20, as follows:

**PARTIES**

1. Plaintiff is an individual who was a resident of Mineral Wells, Texas at all times relevant to the Complaint. She was hired to and worked remotely from Mineral Wells throughout her employment.

2. Teleperformance is a Delaware corporation with its principal place of business at 1991 South 4650 West, Salt Lake City, UT 84104.

3. At all times relevant herein, employers and DOES 1-20 were Plaintiff's employers, joint employers, and/or special employers.

4. The true names and capacities, whether individual, corporate, associate, or otherwise, of the said Defendants names herein as DOES 1-20, inclusive, are unknown to Plaintiff at the this time and therefore said Defendants are sues by such fictitious names. Plaintiff will seek leave to amend this complaint to insert the true names and capacities of said Defendants when the same become known to Plaintiff. Plaintiff is informed and believes, and based thereupon alleges,

that each of the fictitiously named Defendants is responsible for the wrongful acts alleged herein, and is therefore liable to Plaintiff as alleged hereinafter.

5. Plaintiff is informed and believes, and based thereupon alleges, that at all times relevant hereto, Defendants, and each of them, were the agents, employees, managing agents, supervisors, coconspirators, parent corporation, joint employers, alter egos, successors, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting at least in part within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, successor status and/or joint venture and with the permission and consent of each of the other Defendants.

6. Whenever and wherever reference is made in this complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly and severally.

## JURISDICTION AND VENUE

7. Plaintiff's claims for Title VII violations – sex discrimination (including wrongful termination) – arise under federal law and invoke federal-question jurisdiction. *See* 28 U.S.C. § 1331 (conferring jurisdiction over actions arising under the laws of the United States); 42 U.S.C. § 2000e-5(f)(3) (conferring jurisdiction over civil actions "brought under" Title VII, 42 U.S.C. §§ 2000e–2000e-17). Plaintiff's claims for age discrimination arise under federal law, the Age Discrimination in Employment Act, 29 U.S.C. § 621-634, and likewise invoke federal-question jurisdiction. Plaintiff's claims under the Americans with Disability Act, 42 U.S.C. § 12101 et. seq, also arise under federal law and invoke federal-question jurisdiction.

8. On May 16, 2024, Plaintiff timely filed her Charge No. 450-2024-07486 with the United States Equal Employment Opportunity Commission (the "*EEOC*") against Defendants alleging, inter alia, sex discrimination because of sex/gender. Plaintiff received a right-to-sue

("RTS") letter from the EEOC on May 30, 2024. A copy of the right to sue letter is attached as **Exhibit A.**

9. This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the benefits and protections of Texas law by conducting business with a citizen of the State of Texas, Plaintiff conducting operations out of her home office in Mineral Wells and employer her at that location, and this action arises out of such business.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

11. Plaintiff is a female over 50 years of age with disabilities, including cancer history and epilepsy. From 2013 until May 2024, Plaintiff worked for Defendant, which holds itself out as the country's leading customer experience management provider. Plaintiff was hired to and at all times relevant to this Complaint worked remotely from Mineral Wells throughout her employment. Plaintiff performed exceptionally well in her roles and was told she exceeded expectations. During employment, however, Plaintiff was subjected to discrimination on the basis of sex, disability and age.

12. From 2013 until early 2022, Plaintiff worked with Teleperformance in Europe, where she served as an Executive Vice President of Strategic Account Management and had an exceptional relationship with her clients. Plaintiff also served as a Teleperformance Women Board member for Europe, the Middle East, and Africa. She performed these services for Teleperformance through her own company, Excaliber.

13. In 2022, Plaintiff was given the second role of EMEA Chief Client Officer and ultimately was promoted and given an additional role that of Global Deputy Chief Client Officer for EMEA. As part of the promotion process, in June 2022 Plaintiff was required by

Teleperformance to move from Greece and join the U.S. Teleperformance team in Texas, as an employee of Teleperformance. Prior to accepting employment with Teleperformance, Plaintiff was promised she would be paid in full for her client relationships and earned commissions from her work in Europe, Plaintiff is informed and believes Teleperformance knew was false and never intended to perform at the time it was made. Plaintiff would not have moved but for this promise.

14. When Plaintiff was promoted, and at the time of her move, Teleperformance emphasized that Plaintiff was especially valuable because of her visible role as a female top performer. For example, in the announcement of her promotion, the Global Chief Client Officer, Miranda Collard, stated:

> "She joined the TP family back in 2013 and since has been at the forefront promoting TP and advising our clients on the next generation strategies for their customer experience and transformation initiatives. As EVP of Strategic Accounts based in CEMEA, Chair of TP Women in CEMEA for the last few years and now a member of the TP Women Global Board, Athina is one of our strong female leaders, a strategist for our group that has lead global accounts for TP with significant growth at global scale, and driving our One TP strategy every step of the way."

15. As part of Plaintiff's employment contract, she was entitled to at least six months' advance notice of termination. Plaintiff was also entitled to all of the other benefits offered to Teleperformance executives including under its practice of paying severance pay.

16. After relocating to Texas in 2023 as required by her role of Global Deputy Chief Client Officer, Plaintiff noticed that women were being pushed out of the organization and lied to about the redundancy of their positions. For example, Plaintiff was one of the three Deputy Chiefs reporting to Miranda Collard along with the Vertical Presidents (similar level as the Global Deputy Chiefs), of which three were male and two female. The other two Deputy Chiefs were males. On November 29, 2023, Defendant abruptly notified Plaintiff she was terminated without the required six months' notice. When Defendant fired her, it claimed the role was "made redundant."

However, the two males in that role were not terminated. One male still holds that exact title (Will Fritcher) and the other (Gustavo Mir) was given another role within the organization in the summer of 2023.

17. Further evidence of Teleperformance's intent is found in Teleperformance's treatment of Vertical Vice Presidents. One female Vertical President was terminated in August 2023 and has since been replaced by a male executive. For another of the three male Vertical Presidents remaining, another role was found within the organization. The pattern and practice during the purported "restructuring" was that the males were retained, promoted, or transferred when their role was eliminated, whereas Plaintiff and other females were fired.

18. When Plaintiff was fired on November 29, 2023, she was not given six months written notice, as provided in her contract and was not given the severance that would be standard practice of her position had truly been eliminated because it had become "redundant." Moreover, Teleperformance lied and said it had given her the six months written notice earlier but refused to produce the alleged written notice. Plaintiff had just informed Teleperformance of a diagnosis of epilepsy and had requested accommodation to be allowed to fly business class per her physician's recommendation. Plaintiff had also just had surgery related to her reconstruction after cancer. Plaintiff believes that Teleperformance was concerned about the cost of her healthcare (Plaintiff is also a cancer survivor) and was attempting to avoid paying her health insurance during the notice period. The failure to provide Plaintiff health insurance as an employee through the six-month notice period shortened the total time in which Plaintiff was eligible for medical insurance because her COBRA entitlement should have started only after her six-month notice period had ended in May 2024 instead of in 2023.

19. As further evidence of the discrimination against females, in 2023, Plaintiff had two roles: Deputy Chief Client Officer and EMEA Chief Client Officer. In the EMEA Regional

Executive team there were five female Chiefs including Plaintiff -- Kelly Grypari (CFO), Emmanuell Commenge (CLO), Fannie Decla (CHRO), Garima Gupta (CTO), and Marieke Smidt (COO).  As of today, only two remain, one of whom was demoted, and all others were replaced by men. Within 12 months, only one female remained but five men were retained. In addition, in 2023, most female board members of the Teleperformance Women's Board in EMEA had their roles terminated and were replaced by males, including Ms. Decla, Ms. Schmidt, Ms. Persson CBD and Plaintiff.

20. Teleperformance has announced a number of job opportunities similar to Plaintiff's role since she was fired.  Yet, Plaintiff was not offered any of these positions.

## FIRST CLAIM FOR RELIEF
### (Wrongful Discharge in Violation of Public Policy)

21. Plaintiff incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

22. Pursuant to Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and the Americans with Disabilities Act, it is against public policy and unlawful to terminate an employee because of an employee's sex, age, or disability.

23. Plaintiff is informed and believes that her sex, age, and disability were a substantial motivating reason for her differential treatment and her discharge.

24. As a result of her differential treatment and wrongful discharge, Plaintiff was harmed in that she was not paid for all amounts due, was denied covered health insurance for a period of six months, which shortened her for extending those benefits under COBRA, has lost income and other benefits, was not paid the required amount of bonus, and relocation benefits and has lost income, employment, and career opportunities, and has suffered other general and special damages, the precise amount of which will be proven at trial.

25. As a direct, foreseeable, and proximate result of Teleperformance's conduct, as alleged above, Plaintiff has lost income, employment, and career opportunities and has suffered and continues to suffer other economic loss, the precise amount of which will be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Title VII Sex Discrimination)

26. Plaintiff incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

27. Pursuant to Title VII, it is against public policy and unlawful to terminate an employee because of the employee's sex.

28. As alleged above, Plaintiff was an excellent employee and competently performed all work for Teleperformance.

29. Teleperformance made decisions adverse to Plaintiff in regards to the terms and conditions of her employment, including failing to pay her an amount equivalent to males in the same position or with similar duties and transferring the males to other positions when their positions were eliminated, but terminating Plaintiff and/or failing to reinstate Plaintiff.

30. As a result of her differential treatment and wrongful discharge, Plaintiff was harmed in that she was not paid for all amounts due, was denied covered health insurance for a period of six months, which shortened her for extending those benefits under COBRA, has lost income and other benefits, was not paid the required amount of bonus, and relocation benefits and has lost income, employment, and career opportunities and has suffered other general and special damages, the precise amount of which will be proven at trial.

31. As a direct, foreseeable, and proximate result of Teleperformance's conduct, as alleged above, Plaintiff has lost income, employment, and career opportunities and has suffered and continues to suffer other economic loss, the precise amount of which will be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Failure to Pay Equal Pay for Equal Work)

32. Plaintiff incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

33. On information and belief, even though Plaintiff had the same role and duties as the male Deputy Chiefs, Plaintiff was paid substantially less, both in base and total compensation.

34. As a direct, foreseeable, and proximate result of Teleperformance's conduct, as alleged above, Plaintiff has lost income, employment, and career opportunities and has suffered and continues to suffer other economic loss, the precise amount of which will be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Disability Discrimination)

35. Plaintiff incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

36. In or around April 2023, Plaintiff continued to experience symptoms related to her disability and/or medical condition which affected one or more of her major life activities.

37. Plaintiff notified Teleperformance of her disability and/or medical condition and requested accommodation, including the ability to fly business class. Plaintiff further underwent surgery related to her cancer.

38. However, at all times, Teleperformance failed to engage in any good faith interactive process or provide reasonable accommodation. Further Defendant delayed reimbursement for expenses incurred for Plaintiff's cancer related surgery, failed to disclose its intent to deny coverage, and well after her termination, a year later, denied the claim for reimbursement entirely.

39. On or about November 29, 2023, Teleperformance wrongfully terminated Plaintiff's employment based on pretext.

40. Teleperformance discriminated and retaliated against Plaintiff by terminating Plaintiff's employment as a result of Plaintiff incurring medical and other expenses due to treatments related to her cancer and epilepsy and Plaintiff exercising her right to request an accommodation of Plaintiff's disability and/or medical condition.

41. At all relevant times, Teleperformance failed to properly engage in a good faith interactive process in an effort to properly accommodate Plaintiff's disability and/or medical condition such that Plaintiff could continue working for Teleperformance.

42. At all relevant times, Teleperformance failed to reasonably accommodate Plaintiff even though Plaintiff was able to perform the essential job duties of Plaintiff's position or another position with or without accommodation.

43. Teleperformance's discriminatory intent was manifested, in part, by Teleperformance's stated goal to reduce medical expenses related to older/ disabled persons.

44. As a direct, foreseeable, and proximate result of Teleperformance's conduct, as alleged above, Plaintiff has lost income, employment, and career opportunities and has suffered and continues to suffer other economic loss, the precise amount of which will be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**(Age Discrimination)**

45. Plaintiff incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

46. Pursuant to the Age Discrimination in Employment Act, it is against public policy and unlawful to terminate an employee because of the employee's age.

47. As alleged above, Plaintiff was an excellent employee and competently performed all work for Teleperformance.

48. Teleperformance made decisions adverse to Plaintiff in regards to the terms and conditions of her employment, including transferred younger employees to other positions when their position was eliminated, and terminated Plaintiff and/or failed to reinstate Plaintiff.

49. As a result of her differential treatment and wrongful discharge, Plaintiff was harmed in that she was not paid for all amounts due, was denied covered health insurance for a period of six months, which shortened the time she would be eligible for extending those benefits under COBRA, has lost income and other benefits, was not paid the required amount of bonus, and relocation benefits and has lost income, employment, and career opportunities and has suffered other general and special damages. The precise amount of which will be proven at trial.

50. As a direct, foreseeable, and proximate result of Teleperformance's conduct, as alleged above, Plaintiff has lost income, employment, and career opportunities and has suffered and continues to suffer other economic loss, the precise amount of which will be proven at trial.

## SIXTH CLAIM FOR RELIEF
### (Breach of Contract)

51. Plaintiff incorporates by reference paragraphs 1 through 21 as if fully set forth herein.

52. When Plaintiff was offered employment in the United States, she was promised relocation benefits and full payment of all commissions due on the invoices attached as **Exhibit B** as well as other commissions earned on all work that had been performed by Plaintiff through her company, Excaliber. Plaintiff was also promised she would receive all benefits including severance pay that were available to other executives at Teleperformance.

53. Despite repeated demand Teleperformance has refused to pay for the invoices required reflected in Exhibit B as well as for other work performed and refused to pay her the

severance pay that would have been owe had Plaintiff been terminated because her position was redundant.

54. As a direct, foreseeable, and proximate result of Teleperformance's conduct, as alleged above, Plaintiff has lost income, employment, and career opportunities and has suffered and continues to suffer other economic loss, the precise amount of which will be proven at trial.

### SEVENTH CLAIM FOR RELIEF
### (Fraud)

55. Plaintiff incorporates by reference paragraphs 1 through 20 as if fully set forth herein.

56. Plaintiff alleges that in 2022, Teleperformance defrauded Plaintiff when Defendant made representations of material fact, including that she would be compensated for all the prior business she had brought to Teleperformance through Excaliber and that she would receive advance notice if there were any issues related to her performance, including six months written notice such that she would have time to locate an alternative position and would not suffer an interruption in pay or benefits. Teleperformance further represented Plaintiff was an outstanding performer who could expect to be with Teleperformance long term.

57. Teleperformance recruited Plaintiff with the intent to convert her clients to Teleperformance and then fire her. On information and belief, when Teleperformance made the representations, Teleperformance knew they were false. Teleperformance made the representations with the intent to defraud and induce Plaintiff to act as described above, including to show down Excaliber, move to the Dallas area, and accept employment. At the time Plaintiff acted, Plaintiff did not know the representations were false and believed they were true. Plaintiff acted in justifiable reliance upon the truth of the representations.

58. As a direct, foreseeable, and proximate result of Teleperformance's conduct, as alleged above, Plaintiff has lost income, employment, and career opportunities and has suffered and continues to suffer other economic loss, the precise amount of which will be proven at trial.

## PUNITIVE DAMAGES

59. Plaintiff incorporates by reference paragraphs 1 through 20, 22 through 24, 28 through 30, 33, 36 through 40, 52 and 53 as if fully set forth herein.

60. The above actions including the acts alleged in Plaintiff's claims for sex, age and disability discrimination and Teleperformance's acts of fraud, malice and gross negligence as well as Teleperformance falsely claiming Plaintiff had received the contractual notice prior to November 29, 2023, denying Plaintiff's medical insurance claims from her surgery in October 2023, forcing Plaintiff to start COBRA early by refusing to honor its six-month notice provision and other deliberately false statements entitle Plaintiff to an award of punitive damages.

61. Teleperformance knew that Plaintiff was vulnerable medically and financially and that she relied on its promises in accepting employment. Teleperformance knew that its actions carried a high probability of extreme harm given its willful and conscious disregard of plaintiff's rights.

## JURY DEMAND

62. Plaintiff hereby demands a trial by jury on all of its claims and any other matters so triable.

## CONCLUSION AND PRAYER

63. Plaintiff respectfully requests that Defendants be cited to appear and answer herein and that, upon final trial, Plaintiff be awarded judgment against Defendants for:

    a. monetary damages, including actual, special, and exemplary damages, in an amount to be determined at trial;

  b. pre-judgment and post-judgment interest;

  c. attorneys' fees;

  d. costs of court; and

  e. such other and further relief to which Plaintiff may be justly entitled.

  f. I just found out that they didn't cover my surgery from October 2022 when I had to have my implants replaced due to a rupture although I was on the EMEA group medical policy. I just received the notice from the hospital.

Dated: July 29, 2024.

               Respectfully submitted.

               */s/ Brian Vanderwoude*
               J. Brian Vanderwoude (Attorney in charge)
               Texas Bar No. 24047558
               DORSEY & WHITNEY LLP
               200 Crescent Court, Suite 1600
               Dallas, Texas 75201
               (214) 981-9900 Phone
               (214) 981-9901 Facsimile
               vanderwoude.brian@dorsey.com

               and

               Gabrielle M. Wirth (Pro Hac Vice Pending)
               DORSEY & WHITNEY LLP
               600 Anton Boulevard, Suite 2000
               Costa Mesa, CA 92626-7655
               (714) 800-1400 Phone
               (714) 800-1499 Facsimile

               **ATTORNEYS FOR PLAINTIFF**
               **ATHINA KARAHOGITIS**