IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| Athina Karahogitis | § | |
| | § | |
| v. | § | Case No. 4:24-cv-00706 |
| | § | |
| TPUSA, Inc. d/b/a Teleperformance USA | § | |
| and Does 1-20 | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION TO COMPEL**

Plaintiff, Athina Karahogitis, file this *Brief in Support of Her Motion to Compel*

against Defendant, TPUSA, Inc., and would show the Court as follows:

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

BACKGROUND ................................................................................................................. 1

   A.   Factual Background. ................................................................................................ 1

   B.   The Discovery Requests at Issue. ........................................................................... 5

      1.   Requests for Production. ..................................................................................... 5

      2.   Depositions ......................................................................................................... 7

ARGUMENT AND AUTHORITIES............................................................................... 10

   A.   The Court Should Compel Teleperformance to Produce Responsive Documents. .
      ....................................................................................................................... 10

      1.   Responding "subject to and without waiving" objections is improper............. 10

      2.   The Court should order Teleperformance to produce all documents in its
      control.................................................................................................................. 11

3.  The Court should overrule Teleperformance's objections based on the attorney-client privilege and work product doctrine..................................................13

4.  The Court should overrule Teleperformance's "vague" and "ambiguous" objections. ..................................................................................................15

5.  The Court should overrule Teleperformance's objections based on relevance.16

6.  Teleperformance's "privacy" objections are unfounded. ...................................18

B.  The Court should compel Teleperformance to present the requested witnesses for deposition. .......................................................................................................20

1.  Mr. Fritcher. ........................................................................................................20

2.  Messrs. Julian, Grisanti, Dupuy, Cardoso, and Mr. Hamalelis. .........................21

3.  Teleperformance corporate representative. .........................................................22

CONCLUSION AND PRAYER .....................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Baker v. Walters*, 652 F. Supp. 3d 768 (N.D. Tex. 2023) ..........................................15

*Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006)..........................24

*Carr v. State Farm Mutual Automobile Ins. Co.*, 312 F.R.D. 459 (N.D. Tex. 2015)................10

*Goodson v. Nasco Healthcare Inc.*, Civil Action No. 3:21-CV-1467-N, 2023 U.S. Dist. LEXIS 152075 (N.D. Tex. 2023) ........................................................................17

*Goodyear Tire & Rubber Co. v. Ceva Logistics Singapore, Ltd.*, 348 F.R.D. 54 (E.D. La. 2024) .........................................................................................................11, 24

*Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014)...................................10, 15

*In re Santa Fe Int'l Corp.*, 272 F.3d 705 (5th Cir. 2001) ..........................................13

*Martin v. Bimbo Foods Bakeries Distrib., LLC*, 313 F.R.D. 1 (E.D.N.C. 2016).........................22

*Merrill v. Waffle House, Inc.*, 227 F.R.D. 467 (N.D. Tex. 2005) ........................................ 17, 22

*Robinson v. Tex. Auto. Dealers Ass'n*, 214 F.R.D. 432 (E.D. Tex. 2003)................................ 14

*United States ex rel. Fisher v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2016 U.S. Dist. LEXIS 7480 (E.D. Tex. 2016) ............................................................................................... 19

*X Corp. v. Media Matters for Am.*, Civil Action No. 4:23-cv-01175-O, 2024 U.S. Dist. LEXIS 184000 (N.D. Tex. 2024) ...................................................................................................... 14

# BACKGROUND

## A.    Factual Background.

This is a case involving an employer's failure to pay amounts owed under an employment contract and acts of discrimination based on gender, age, and disability. Ms. Karahogitis is a female over 50 years of age with disabilities, including a history of cancer and epilepsy. From 2013 until May 2024, she worked for the group of companies owned by Teleperformance SE (collectively, the "*Teleperformance Group*"), which holds itself out as out as an integrated, global digital business service company that serves over 170 countries worldwide.[1]

From 2013 until the end of 2022, Ms. Karahogitis worked for the Teleperformance Group in Greece, where she served as Executive Vice President of Strategic Account Management and a Teleperformance Women Board member for Europe, the Middle East, and Africa ("*EMEA*"). She performed this work through her company, Excaliber International SRL, a Romanian company, which had a consulting agreement with Ypiresia 800 – Teleperformance A.E. ("*TP Greece*"), a Greek corporation that is part of the Teleperformance Group.

Ms. Karahogitis held regional roles until she was promoted to the position of Global Deputy Chief Client Officer, a newly created global role within the Teleperformance Group. As part of the promotion process, Teleperformance required

---

[1] *See* https://www.tp.com/en-us/why-tp/about-tp/

Ms. Karahogitis to become an employee instead of a consultant and also required her to move from Greece to the United States. She signed an Amended and Restated Employment Agreement with TPUSA, Inc., the U.S. arm of the Teleperformance Group, effective as of January 1, 2023. While Ms. Karahogitis' transition to her new role was in process, Teleperformance fired the female Chief Client Officer for EMEA, Janine Woelki, in November 2022, and Ms. Karahogitis was tasked with taking on this additional role, too.[2]

Teleperformance terminated Ms. Karahogitis' employment on November 29, 2023. Despite promoting Ms. Karahogitis twice in less than a year, Teleperformance has more recently attempted to categorize Ms. Karahogitis as a "poor performer" in an attempt to justify her termination. However, Ms. Karahogitis performed exceptionally well in her roles and was repeatedly told she exceeded expectations. Her comprehensive 360-degree review for 2022, which was comprised of input from over two dozen participants, was excellent, save and except for the review from the person she was in the process of replacing, Ms. Woelki.[3]

By way of this lawsuit, Ms. Karahogitis has alleged that her termination was based on her sex, age, and disabilities. Indeed, after relocating to Texas in 2023 as required by

---

[2] Ms. Karahogitis has since been replaced as Chief Client Officer for EMEA by a male, Alvaro Buesa.

[3] Ms. Karahogitis has requested a copy of this evaluation as part of her personnel file, but Teleperformance has refused to produce it, as is discussed more fully below.

PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION TO COMPEL – PAGE 2

her role of Global Deputy Chief Client Officer, Ms. Karahogitis noticed that women were being pushed out of the organization and lied to about the redundancy of their positions. For example, Ms. Karahogitis was one of the three Deputy Chiefs reporting to the Global Chief Client Officer, Miranda Collard. Ms. Karahogitis was the only female. There were also five Vertical Presidents that reported to Ms. Collard, of which three were male and two were female. Teleperformance claims Ms. Karahogitis' global role was eliminated because it was redundant. However, the two males in that role were not terminated. One male retained the title of Deputy Chief Client Officer and the other was given another similar role within the organization.

As yet another example of Teleperformance's discrimination on the basis of sex, the EMEA regional executive team consisted of five female chiefs, including Ms. Karahogitis -- Kelly Grypari (Chief Financial Officer), Emmanuelle Commenge (Chief Legal Officer), Fannie Decla (Chief Human Resources Officer), Garima Gupta (Chief Transformation Officer), and Marieke Smidt (Chief Operating Officer). As of today, only two remain, one of whom was demoted, and all others were replaced by men.

In addition, many female former Teleperformance executives will testify that they too were fired without notice, and that Teleperformance refused to pay them commissions and amounts due under their contracts until they hired legal counsel and sued or threatened to sue. Ms. Karahogitis has also alleged that she was paid

substantially less than males who held the same or equivalent positions as Ms. Karahogitis.

With respect to age and disability discrimination, the evidence will show that Ms. Karahogitis' direct report at Teleperformance, Ms. Collard, and other executives at Teleperformance often made comments about the need to hire younger workers, to promote younger managers, and to reduce healthcare costs. These comments were all made proximate in time to Ms. Karahogitis' termination, which gives rise to a presumption that the stated reason – poor performance – was mere pretext.

Moreover, during Ms. Karahogitis' tenure with Teleperformance, the company rolled out a program called the "Top 100 Under 45," formally announced who the "Under 45" leaders would be, and had a robust mentorship and development program for younger leaders within the organization. In what can only be interpreted as an admission of how bad this looks for Teleperformance, Teleperformance claimed in its discovery responses not to have any documents relating to its Top 100 Under 45 leadership program and essentially denied that it existed.

In support of Ms. Karahogitis' breach of contract claim, the evidence will show that because Teleperformance did not give Ms. Karahogitis the requisite six-months' notice before terminating her employment, Teleperformance deprived Ms. Karahogitis of numerous benefits, including health insurance, a car allowance, relocation and other expenses, and bonuses that would have been paid to her had she remained employed

during that six-month period.    Teleperformance also refused to offer Ms. Karahogitis severance, despite its practice of paying severance when others' positions have been eliminated.

And, following her termination, Teleperformance has refused to pay Ms. Karahogitis in full for her client relationships and earned commissions from her work in EMEA, despite numerous promises, both before and after she relocated to the United States, that the commissions would be paid.

Based on the foregoing, Ms. Karahogitis has brought this lawsuit alleging wrongful discharge in violation of public policy, Title VII sex discrimination, failure to pay equal pay for equal work, disability discrimination, age discrimination, breach of contract, and fraud.

**B.    The Discovery Requests at Issue.**

    ***1.    Requests for Production.***

Ms. Karahogitis diligently commenced written discovery by serving *Plaintiff's First Set of Requests for Production and Interrogatories* on Teleperformance on October 22, 2024, a true and correct copy of which is included in the Appendix at App. 001-013. Teleperformance served its written response to Ms. Karahogitis' requests for production on December 2, 2024, a true and correct copies of which is included in the Appendix at App. 014-023.  As the Court can see, Teleperformance's response is long on objections and short on substance.

Teleperformance's response starts out with a two-page "Introductory Statement" of general objections, which Teleperformance incorporates into each individual response that follows.  Teleperformance then followed that up with additional objections to almost every single one of Ms. Karahogitis' requests for production.  The objections included attorney-client privilege and work product, vague and ambiguous, overbreadth, privacy, and failure to describe the items sought with reasonable particularity.

In certain instances, the list of objections was followed by the statement that some undefined categories of responsive documents would be produced "subject to and without waiving" any of Teleperformance general or specific objections.  In particular, Teleperformance indicated that it would produce some undefined subset of documents identified in Teleperformance's initial disclosures; some undefined subset of its internal communications that reference Ms. Karahogitis' age, sex, or disabilities; some undefined subset of Ms. Karahogitis' personnel file; some undefined subset of documents concerning investigations of the complaints made against Ms. Karahogitis; and some undefined subset of documents relating to Teleperformance's decision to terminate Ms. Karahogitis' employment.

In other instances, Teleperformance claimed it did not have any responsive documents, such as internal communications referencing Ms. Karahogitis' age, sex, disability, request for accommodations, and health care costs; documents concerning investigations of the complaints made by Ms. Karahogitis regarding discrimination based

on sex, age, or disability; personnel records for employees holding jobs previously held by Ms. Karahogitis; compensation and benefits records for employees holding jobs previously held by Ms. Karahogitis; criteria for raises and other salary increases for employees holding jobs previously held by Ms. Karahogitis; documents regarding the Top 100 Under 45 group; and documents regarding commissions owed to Ms. Karahogitis and/or Excaliber.  Ms. Karahogitis knows that certain of these documents do, in fact, exist.  Teleperformance appears to be withholding them based on its position that the documents are not in TPUSA's possession, but rather the possession, custody, or control of other entities within the Teleperformance Group.

Finally, with respect to Ms. Karahogitis' request for documents and communications concerning any disparate impact analysis or adverse impact analysis undertaken by or for Teleperformance in connection with any layoffs or reductions in force from 2018 to the present, Teleperformance is standing on its objections and refusing to produce any responsive documents.

### 2.  *Depositions*

Teleperformance is stonewalling Plaintiff's attempts to schedule depositions.  For example, Plaintiff has requested dates on which she may depose Ms. Collard. The deposition was scheduled for March 4, 2025, but had to be rescheduled when Ms. Karahogitis' counsel was called to trial in another case. See App. 024.  Teleperformance's counsel they would check Ms. Collard's availability on March 17, 24, or 25, as requested

by Ms. Karahogitis, *see* App. 025, but more recently stated that they are refusing to present her for deposition until Ms. Karahogitis' deposition is finished.[4]  *See* App. 027-028.

As another example, on or about March 12, 2025, Plaintiff requested dates before the close of the discovery period[5] on which she could depose the following individuals:

- Will Fritcher;
- Eric Dupuy;
- Joao Cardoso;
- Constantine Hamalelis;
- Agustin Grisanti; and
- Daniel Julian.

*See* App. 030.  Teleperformance refuses to present any of these witnesses for deposition other than Mr. Fritcher.  *See* App. 032-033.  Teleperformance has yet to provide dates on which Mr. Fritcher will be made available.

Lastly, Ms. Karahogitis stated that she would like to schedule a 30(b)(6) deposition of Teleperformance before the close of the discovery period on the following topics:

1. TPUSA's decision to terminate Plaintiff's employment;

2. All TPUSA or other Teleperformance Group employees who were consulted informed of or had any input in the decision to terminate Plaintiff's employment;

---

[4] Teleperformance already deposed Ms. Karahogitis for over seven hours, but is requesting an additional four hours for additional questioning.

[5] The discovery period closes on April 11, 2025.  *See* Doc. 24.

3. The identities of the individuals who assumed any duties performed by Plaintiff as of her termination including but not limited to the management of the teams managed by her;

4. Teleperformance's decision to terminate Fannie Decla's, Janine Woelki's, Marieke Smidt's, Linda Perrsson's, and Gamina Gupta's employment;

5. All Teleperformance Group employees who were consulted informed of or had any input in the decision to terminate their employment

6. The identities of the individuals who assumed any duties performed by Ms. Decla, Ms. Woelki, Ms. Smidt, Ms. Perrsson, and Ms. Gupta;

7. All pay, stock or renumeration, or other consideration given to them after termination, including but not limited to in connection with any settlement agreement;

8. The information systems jointly used by TPUSA and the Teleperformance Group and any of their subsidiary, affiliated, or related companies, including but not limited to Sales Force, DocuSign, Xactly, Microsoft Dynamics and/or any other invoice processing for financial tracking including commission calculations; and

9. The bonus, severance, equity vesting, and any other compensation or renumeration paid to Norbert Szymkowiak, Yannis Tourcomanis, and/or Bhupander Singh after they were given notice of termination.

See App. 030-031. Teleperformance refuses to designate a representative to testify about most of these topics. Teleperformance contends that the majority of the topics (a) contemplate information about individuals who were not TPUSA employees, (b) are irrelevant to the claims and defenses in the case and "otherwise not proper for a 30(b)(6) deposition," and (c) are so broad that multiple depositions would be required. Thus, Teleperformance is refusing to designate a representative on any topic other than 1, 2, 3, and 8 above. *See* App. 033.

**PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION TO COMPEL – PAGE 9**

## ARGUMENT AND AUTHORITIES

**A.    The Court Should Compel Teleperformance to Produce Responsive Documents.**

    *1.  Responding "subject to and without waiving" objections is improper.*

As a preliminary matter, the court should order Teleperformance to produce any documents it is withholding "subject to and without waiving" its general and specific objections.  "Responding to interrogatories and document[] requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure"; "this manner of responding to a document request or interrogatory leaves the requesting party guessing and wondering as to the scope of the documents or information that will be provided as responsive will be;" and "outside of the privilege and work product context…, responding to a document request or interrogatory 'subject to' and 'without waiving' objections is not consistent with the Federal Rules or warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." *Carr v. State Farm Mutual Automobile Ins. Co.*, 312 F.R.D. 459, 470 (N.D. Tex. 2015) (quoting *Heller v. City of Dallas*, 303 F.R.D. 466, 487-88 (N.D. Tex. 2014) (internal quotation marks omitted)).

Thus, Teleperformance should be ordered to produce any documents it has withheld "subject to" and "without waiving" its objections.

**PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION TO COMPEL – PAGE 10**

2. *The Court should order Teleperformance to produce all documents in its control.*

Teleperformance appears to be withholding documents and information by claiming that responsive documents and information are not in TPUSA's possession, custody, or control, but rather in the possession of other members of the Teleperformance Group.[6]  For example, in Requests Nos. 22 and 23, Ms. Karahogitis requested documents related to the reasons for non-payment of commissions owed to Ms. Karahogitis and/or her company, Excaliber, which includes the amounts reflected in the two invoices attached to the Complaint.   Teleperformance appears to contend that any responsive records belong to TP Greece, not TPUSA.

However, TPUSA has control of these records even if sister companies were involved. "[C]ourts regularly order corporate parties to produce documents in the possession of corporate relatives—such as parent, sibling, or subsidiary corporations." *Goodyear Tire & Rubber Co. v. Ceva Logistics Singapore, Ltd.*, 348 F.R.D. 54, 68 (E.D. La. 2024). (citing *Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 09-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011) (noting that the focus is the relationship between entities, not the particular corporate form)).   Courts order this where there is "a relationship, either because of some affiliation, employment or statute, such that a party is able to command

---

[6] Ms. Karahogitis broadly defined the terms "Defendant," "you," and "your" to mean not only TPUSA, but also its "parent companies, affiliates, [and] subsidiaries." *See* App. 005.  Teleperformance did not object, but refuses to produce documents held by any parents, affiliates, or subsidiaries.

release of certain documents by the non-party person or entity in actual possession." *Id*. "Factors to consider in determining whether a party has 'control' of materials include whether the party could secure the materials from the non-party to meet its own business needs or whether, by virtue of stock ownership or otherwise, the party effectively controls the other entity, specifically considering commonality of ownership, exchange or intermingling of directors, officers or employees of the two corporations, exchange of documents between the corporations in the ordinary course of business, any benefit or involvement of the nonparty corporation in the transaction, and involvement of the non-party corporation in the litigation." *Id*.

Again, the Teleperformance Group holds itself out as an integrated global organization.[7] Its employees perform services for parents, affiliates, and subsidiaries and therefore have access to all of the group's materials for business needs. Indeed, Ms. Karahogitis' employment agreement with TPUSA specifically contemplates that she will be performing services for "the group of companies owned by Teleperformance SE (collectively, the 'Teleperformance Group')." *See* App. 034-035. A quick visit to the Teleperformance website indicates that Teleperformance has one executive committee, one board of directors, and one management committee for the entire organization, with members in the US, EMEA, Latin America, and elsewhere.[8] And, all of the integrated

---

[7] *See* https://www.tp.com/en-us/why-tp/about-tp/

[8] *See* https://www.tp.com/en-us/why-tp/leadership/

group's members use the same @teleperformance.com email address, the same social media accounts,[9] the same logo, and the same website.

Thus, TPUSA clearly has control of documents and communications in the possession of its parent, siblings, or subsidiary organizations. *Goodyear Tire & Rubber Co.*, 348 F.R.D. at 68. The Court should order Teleperformance to produce all responsive documents immediately.

### 3. *The Court should overrule Teleperformance's objections based on the attorney-client privilege and work product doctrine.*

The Court should also order Teleperformance to produce all documents it is withholding based on the attorney-client privilege and work product doctrine. Rule 26(b)(5) provides that "a party claiming a privilege 'shall make the claim expressly and shall describe the nature of documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.'" *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) (citing Fed. R. Civ. P. 26(b)(5)). Compliance is generally accomplished with a privilege log that identifies the documents by date, names of the author or authors and recipient or recipients, and generally describes the subject matter. *Id*.

---

[9] See, e.g., https://www.linkedin.com/company/teleperformance/posts/?feedView=all; https://www.instagram.com/teleperformance_group/

Teleperformance has asserted the attorney-client privilege and work product doctrine in response to RFP Nos. 1 (documents identified in disclosures), 3 (internal communications referencing Ms. Karahogitis' age, sex, disability, request for accommodations, and health care costs), 4 (Ms. Karahogitis' personnel file), 7 (investigations of complaints about Ms. Karahogitis), 8 (investigation of complaint made by Ms. Karahogitis), 9 (documents relied upon to make the decision to take the adverse action at issue), or 21 (disparate impact analysis or adverse impact analysis in connection with layoffs or reductions).  Yet, Teleperformance never served a privilege log. Consequently, Teleperformance waived its privilege as to all responsive documents.  *X Corp. v. Media Matters for Am.*, Civil Action No. 4:23-cv-01175-O, 2024 U.S. Dist. LEXIS 184000, at *11 (N.D. Tex. 2024) (internal citations and quotations omitted) ("When a withholding party fails to provide a privilege log and fails to properly substantiate its objections by submitting evidence necessary to sustain its burden of proof to its objections, privilege is waived."); *see also Robinson v. Tex. Auto. Dealers Ass'n.*, 214 F.R.D. 432, 456 (E.D. Tex. 2003), *rev'd on other grounds by* 387 F.3d 416 (5th Cir. 2004) (finding waiver of attorney-client privilege, joint defense privilege, and work product protection by failing to list documents in privilege log).

Timely production of a privilege log is meant to bring disputes over privilege to the surface early in the discovery period in order to give the parties and, if necessary, the Court, time to resolve them. *Robinson*, 214 F.R.D. at 456.  As it stands, the discovery period

in this case expires on April 11, 2025. Teleperformance's responses to Ms. Karahogitis' requests for production and any accompanying privilege log were due on December 2, 2024. To date, however, none has been provided. By never providing a privilege log, Teleperformance has left Ms. Karahogitis and the Court with little to no time to determine whether any assertion of privilege is valid. Moreover, the delay has prejudiced Ms. Karahogitis as she attempted to complete depositions and other discovery without the benefit of documents to which she is entitled.

Given the extended delay by Teleperformance in producing its required privilege log, the Court should find that Teleperformance waived any privilege over the documents requested by Ms. Karahogitis and order Teleperformance to produce all documents it has withheld as privileged.

### 4. The Court should overrule Teleperformance's "vague" and "ambiguous" objections.

Teleperformance objected to a number of requests for production as being vague or ambiguous. "[A] party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity . . . [and] must explain the specific and particular way in which a request is vague." *Baker v. Walters*, 652 F. Supp. 3d 768, 780 (N.D. Tex. 2023) (citation omitted); *see also Heller*, 303 F.R.D. at 487-88 ("[I]f part or all of an interrogatory is allegedly vague and ambiguous, the responding party . . . must, if possible, explain its understanding of the allegedly vague and ambiguous terms or phrases and explicitly state that its answer is based on that understanding."). Further:

the responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized . . . and, if necessary to clarify its answers, may include any reasonable definition of the term or phrase at issue; and, if a party believes that the request is vague, the party should attempt to obtain clarification by conferring with the requesting party prior to objecting on this ground.

*Baker*, 652 F. Supp. 3d at 780 (cleaned up).

Here, Teleperformance claims it doesn't understand the words "disability" and "accommodation" in response to RFP No. 3, "performance evaluations" in response to RFP No. 5, "informal disciplinary action" in response to RFP No 6, "compensation and benefits" in response to RFP No. 13, "management-level" salaried employees in response to RFP No. 16, "severance plans" in response to RFP No 17, "commission plans" in response to RFP No. 18, and "invoices" and "commissions" in response to RFP Nos. 22 and 23.  Teleperformance has not explained how or why it cannot understand these words, however.  None of the words is vague or ambiguous, and Teleperformance could have exercised reason and common sense to attribute ordinary definitions to terms and phrases utilized.  Thus, the Court should overrule these objections and order Teleperformance to produce whatever documents it is withholding based on its contention that these words are "vague" or "ambiguous."

5. ***The Court should overrule Teleperformance's objections based on relevance.***

Teleperformance contends that a number of Ms. Karahogitis' requests seek information that is irrelevant and were served solely for harassment.  However, "[r]elevancy is broadly construed, and a request for discovery should be considered

relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005). "The Fifth Circuit places the burden on the responding party to show in the first instance that discovery requests are irrelevant." *Goodson v. Nasco Healthcare Inc.*, Civil Action No. 3:21-CV-1467-N, 2023 U.S. Dist. LEXIS 152075, at *6 (N.D. Tex. 2023). Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery." *Id*. (quoting *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006)).

The information sought is plainly relevant. RFP No. 7 seeks information regarding investigations of complaints about Ms. Karahogitis. RFP No. 10 requests workplace guidelines regarding discrimination, which directly to Ms. Karahogitis' discrimination claims. RFP No. 12 seeks personnel records for persons holding jobs previously held by Ms. Karahogitis, RFP No. 14 seeks information about compensation and benefits for persons holding jobs previously held by Ms. Karahogitis, and RFP No. 15 seeks criteria for raises and other salary increases for employees holding jobs previously held by Ms. Karahogitis. All of that information is relevant to Ms. Karahogitis' claim that she was treated differently than her more able-bodied, younger, male counterparts. RFP No. 17 seeks severance plans application to management-level or higher employees, which relates to Ms. Karahogitis' claims that she was denied severance. RFP No. 19 seeks information regarding the Top 100 Under 45 group and RFP No. 20 seeks the distribution

list for the Top 100 Under 45 group), both of which relate to Ms. Karahogitis' claim for age discrimination. RFP No. 21 seeks any disparate impact analysis or adverse impact analysis performed in connection with layoffs or reductions, which relates to all of Ms. Karahogitis' discrimination claims.[10]    And, RFP Nos. 22 and 23 seek information regarding the reasons Ms. Karahogitis' and Excaliber's invoices for commissions were not paid, which relate to her claims for nonpayment.

All of the information sought is plainly relevant. Thus, the Court should overrule Teleperformance's objections and order Teleperformance to produce whatever documents it is withholding "subject to and without waiving" these objections.

### 6.   Teleperformance's "privacy" objections are unfounded.

In RFPs Nos. 12 and 14, Mrs. Karahogitis requested personnel records and wage and compensation records for comparators, i.e., persons who currently hold the same or similar job positions previously held by Ms. Karahogitis.[11]   RFP No. 15 seeks criteria for raises and other salary increases for employees holding jobs previously held by Ms. Karahogitis.   RFP No. 17 seeks severance plans application to management-level or higher employees.   And, RFP No. 20 seeks the distribution list for the Top 100 Under 45 group.   Teleperformance refuses to produce the information because it allegedly invades

---

[10] A disparate impact analysis discloses the disproportionate impact of a facially neutral but non-job-related policy upon a protected group, such as women. *Griggs v. Duke Power Co.*, 401 U.S. 424, 429-30, 91 S. Ct. 849, 852-53, 28 L. Ed. 2d 158 (1971).

[11] In employment law, a "comparator" is an employee or applicant who is used to compare the treatment of an employee or applicant who alleges discrimination, to determine if they were treated less favorably based on a protected characteristic.

the legitimate privacy interests of Teleperformance's employees and/or former employees. See App. ___.

"Although federal courts recognize a general right to privacy that can be raised in response to discovery requests, 'the right to privacy is not an absolute bar to discovery.'" *United States ex rel. Fisher v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2016 U.S. Dist. LEXIS 7480, at *10 (E.D. Tex. 2016) (quoting *Shaw v. Experian Info. Solutions, Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015)). "The resolution of a privacy objection requires a balancing of the need for the particular information against the claimed privacy right." *Id*.

Again, the Complaint alleges that Ms. Karahogitis was treated differently from other employees against whom she was measured. She was one of three Deputy Chiefs reporting to Ms. Collard, all of whom performed similar responsibilities. This includes two male Deputy Chiefs, Will Fritcher and Gustovo Mir, and Akash Pugklia, who was fired and recently rehired. Moreover, Teleperformance's existing document production indicates that Ms. Karahogitis was allegedly evaluated against Linda Comp-Noto, Rahul Jolly, Mamta Rodrigues, Gustavo Mir Gonzalez, Will Fritcher, and Dan Kramer, all of whom reported to Ms. Collard.

Ms. Karahogitis has alleged that she was treated differently, and paid differently, than some or all of these individuals. Thus, the personnel files and wage and compensation information for these six individuals are critical to understand how Plaintiff was treated relative to other comparable employees. The same is true with

respect to criteria for raises and other salary increases for comparators, as well as severance plans for similar management-level employees.

It is unclear how the Top 100 Under 45 distribution list, which merely identifies the members of the group, implicates anyone's right to privacy. Indeed, several of the Top 100 Under 45 group members published their status as such in their signature lines and on LinkedIn.

In any event, Ms. Karahogitis' need for this information outweighs any privacy concerns Teleperformance may have, particularly since there is a confidentiality agreement in place under which Teleperformance can designate certain information as "confidential" or "attorneys' eyes only," thereby limiting the use and distribution of the information. As such, Teleperformance's objections should be overruled and it should be ordered to produce all responsive information immediately.

**B.    The Court should compel Teleperformance to present the requested witnesses for deposition.**

The Court should also order Teleperformance to present the requested witnesses for deposition.

### 1.  *Mr. Fritcher.*

Teleperformance has indicated that it will present Mr. Fritcher for deposition, but will not say when. Teleperformance should be ordered to commit to a date when this deposition may take place.

### 2. *Messrs. Julian, Grisanti, Dupuy, Cardoso, and Mr. Hamalelis.*

Teleperformance should also be ordered to present Mr. Julian, Mr. Grisanti, Mr. Dupuy, Mr. Cardoso, and Mr. Hamalelis for deposition. Teleperformance is refusing to present Mr. Julian and Mr. Grisanti for deposition because they are "extremely high-level executives" and, thus, the requests for their depositions "exemplify Plaintiff's harassing discovery tactics." Notably, however, Teleperformance itself identified Mr. Grisanti as an individual who had knowledge of discoverable information that Teleperformance may use to support its defenses. *See* App. 071. Teleperformance's initial disclosure states that Mr. Grisanti "has knowledge of some of Plaintiff's claims and the factual allegations set forth in the complaint" and "also has knowledge related to some of Defendant's defenses." *Id*. Teleperformance cannot do an about-face now just because Ms. Karahogitis wants to depose him.

Teleperformance should also be ordered to present Mr. Dupuy, Mr. Cardoso, and Mr. Hamalelis for deposition. Teleperformance contends that Mr. Dupuy, Mr. Cardoso, and Mr. Hamalelis "are not employed by or subject to the control of TPUSA, and accordingly, we are unable to present them for deposition." *See* App. 033. However, in identifying Mr. Cardoso as another person who has knowledge of discoverable information, Teleperformance indicated that he could be contacted "c/o Akerman LLP" even though he worked for Teleperformance Portugal. *See* App. 071. Teleperformance did the same for a number of other individuals connected with Teleperformance Greece,

Teleperformance Netherlands, and the global Teleperformance Group.  *See id*.  Having

taken the position since October 2024 that that all Teleperformance employees, regardless

of the entity that employs them, are subject to the control of Teleperformance's attorneys

at Akerman, Teleperformance should not permitted to take the contrary position now, at

the eleventh hour, and require that these individuals be subpoenaed instead.

### 3.  Teleperformance corporate representative.

Teleperformance should also be ordered to designate one or more representatives

to testify regarding all of the topics requested by Ms. Karahogitis.  Teleperformance

should not be permitted to unilaterally dictate the scope of Ms. Karahogitis' deposition

of Teleperformance by claiming the topics (a) contemplate information about individuals

who were not TPUSA employees, (b) are irrelevant to the claims and defenses in the case

and "otherwise not proper for a 30(b)(6) deposition," and (c) are so broad that multiple

depositions would be required.

#### i.    The topics are relevant.

"The broad scope of discovery permitted under Rule 26(b)(1) applies to Rule

30(b)(6) depositions."  *Martin v. Bimbo Foods Bakeries Distrib., LLC*, 313 F.R.D. 1, 6

(E.D.N.C. 2016).  Again, "[r]elevancy is broadly construed, and a request for discovery

should be considered relevant if there is 'any possibility' that the information sought may

be relevant to the claim or defense of any party."  *Merrill*, 227 F.R.D. at 470.

Here, the topics listed by Ms. Karahogitis are directly relevant to the claims in this case.  Ms. Karahogitis has alleged that her termination was part of a pattern and practice at Teleperformance of forcing out other female executives, which specifically includes Ms. Decla, Ms. Woelki, Ms. Smidt, Ms. Perrsson, and Ms. Gupta. Thus, Ms. Karahogitis should be permitted to question Teleperformance about (a) the decisions to terminate those women's employment, (b) which Teleperformance Group employees were consulted informed of or had any input in the decision to terminate their employment, (c) who assumed any duties performed by them as of their termination, and (d) any pay, stock or renumeration, or other consideration given to them after their termination (i.e., topics 4-7 above).

Ms. Karahogitis has alleged that she was treated differently from male executives who were terminated, which specifically includes Norbert Szymkowiak, Yannis Tourcomanis, and Bhupander Singh.  Teleperformance declined to pay Ms. Karahogitis a bonus or severance and declined to accelerate the vesting of her equity in the company, whereas the opposite was done with respect to these men.  Thus, Ms. Karahogitis is entitled to ask Teleperformance questions regarding the bonus, severance, equity vesting, and any other compensation or renumeration paid to these men after they were given notice of termination (topic 9 above).

### ii.      TPUSA must speak for the Teleperformance Group.

Teleperformance's objection that Ms. Karahogitis is seeking information from and about affiliates is meritless.  Unlike ordinary depositions of lay witnesses whose testimony is limited to information within their personal knowledge, Rule 30(b)(6) expressly provides that the designated deponent "must testify about information known or reasonably available to the organization." "Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters in which that designee was personally involved; the corporate representative must be prepared to testify concerning matters within the corporate knowledge of the organization, not simply within the knowledge of any other person or entity." *Goodyear Tire & Rubber Co.*, 348 F.R.D. at 74.  As the Fifth Circuit recognized in *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432-33 (5th Cir. 2006), the "reasonably available" language of Rule 30(b)(6) extends to information held by "other sources."  Hence, "[t]he majority of courts to address the issue have recognized that an organizational spokesperson's responsibility for matters 'reasonably available' to the organization can include the responsibility to obtain information from . . . affiliates, and other sources." *Goodyear Tire & Rubber Co.*, 348 F.R.D. at 74 (collecting cases).

"Information is 'reasonably available' for purposes of Rule 30(b)(6) when the corporate deponent either can secure the information from the related entity to meet its business needs or acted with it in the transaction that gave rise to the suit." *Id*.  That is exactly the case here.  As addressed above, the Teleperformance Group operates as one

big integrated global organization in which the knowledge and information of one entity is "reasonably available" to all others.  Thus, Teleperformance should be ordered to designate one or more representatives to testify on its behalf on all of the subject matters identified by Ms. Karahogitis.

## CONCLUSION AND PRAYER

Despite Ms. Karahogitis' best efforts, Teleperformance continues to refuse to turn over relevant documents and information and continues to refuse to present witnesses for deposition.  Ms. Karahogitis needs information to prosecute her claims against Teleperformance. Thus, Teleperformance should be compelled to serve proper discovery responses, present the requested witnesses for deposition, and should be held responsible for Ms. Karahogitis' fees and costs in connection with this motion.

WHEREFORE, PREMISES CONSIDERED, Ms. Karahogitis respectfully requests the Court to grant this motion, order Teleperformance to respond to Ms. Karahogitis's requests for production and present the requested witnesses for deposition, and grant Ms. Karahogitis such other and further relief to which she may be entitled.

Dated: March 28, 2025.

Respectfully submitted,

/s/ Brian Vanderwoude
J. Brian Vanderwoude
Texas Bar No. 24047558
**DORSEY & WHITNEY LLP**
200 Crescent Court, Suite 1600
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile
vanderwoude.brian@dorsey.com

Gabrielle M. Wirth
Admitted *pro hac vice*
**DORSEY & WHITNEY LLP**
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
(714) 800-1400 Phone
(714) 800-1499 Facsimile
wirth.gabrielle@dorsey.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF CONFERENCE**

I hereby certify that I personally conferred with Defendant's counsel concerning the substantive issues and relief requested in this motion. Defendant's counsel is opposed to this motion.

/s/ Brian Vanderwoude
J. Brian Vanderwoude

**PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION TO COMPEL – PAGE 26**

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I submitted the foregoing document with the clerk of the United Stated District Court for the Northern District of Texas, Fort Worth Division, using the electronic case filing system of the Court, serving all counsel of records in a manner authorized by the Federal Rules of Civil Procedure 5(b)(2).

*/s/ Brian Vanderwoude*
J. Brian Vanderwoude