```
 1              IN THE UNITED STATES DISTRICT COURT
 2              FOR THE NORTHERN DISTRICT OF TEXAS
 3                       FORT WORTH DIVISION
 4                         ---oooOooo---
 5   Athina Karahogitis                )
                                       )
 6                                     ) Case No. 4:24-cv-00706
              vs.                      )
 7                                     )
                                       )
 8   TPUSA, Inc. D/b/a                 ) Deposition of:
     Teleperformance USA and Does      )
 9   1-20                              ) WILLIAM DWARD FRITCHER
     _____    )
10
11
12          The videotaped deposition of WILLIAM DWARD
13   FRITCHER, a witness in the above-entitled cause,
14   taken at the instance of the Plaintiff, at the law
15   offices of Dorsey & Whitney, LLP, 111 South Main
16   Street, Suite 2100, Salt Lake City, Utah 84111, on
17   Thursday, June 12, 2025, at the hour of 9:36 a.m. to
18   11:43 a.m., was reported and transcribed by Rachel R.
19   Crossett, Registered Professional Reporter and Notary
20   Public, in and for the State of Utah.
21
22                         ---oooOooo---
23
24
25
```

EXHIBIT B

```
 1                  WILLIAM DWARD FRITCHER,
 2   having been first duly sworn to testify to the truth,
 3   the whole truth, and nothing but the truth, was
 4   examined and testified as follows:
 5
 6                       EXAMINATION
 7   BY MR. VANDERWOUDE:
 8        Q.   Good morning, Mr. Fritcher.  My name is
 9   Brian Vanderwoude.
10                Would you mind saying your full name for
11   the record?
12        A.   Yeah.  Full name is William Dward
13   Fritcher.
14        Q.   And what's your current address?
15        A.   812 East 680 North, Lindon, Utah.
16        Q.   Have you ever been deposed before?
17        A.   I have.
18        Q.   How many times?
19        A.   This will be my fourth.
20        Q.   And what context have those other
21   depositions been?
22        A.   One was an auto accident when I was a
23   child, one was a lawsuit that we were -- our company
24   was doing against a client for unpaid balances, one
25   was for a workers comp complaint, and then this one.
```

|            |     |                                                    |
|-----------:|----:|----------------------------------------------------|
|            |  1  | Q.    Have you spoken with Miranda Collard about   |
|            |  2  | this case?                                         |
|            |  3  | A.    Yes.                                         |
|            |  4  | Q.    What have you discussed with Ms. Collard?    |
|  09:41:53  |  5  | A.    That I was coming to testify.                |
|            |  6  | Q.    And when was that?                           |
|            |  7  | A.    Probably about a month ago.                  |
|            |  8  | Q.    And tell me the substance of that            |
|            |  9  | conversation. You told her you were coming to      |
|  09:42:07  | 10  | testify. And what else?                            |
|            | 11  | A.    Yeah. I report to her, so I needed -- she    |
|            | 12  | needed to know I was coming. That was the context of |
|            | 13  | it.                                                |
|            | 14  | Q.    And how did she react?                       |
|  09:42:16  | 15  | A.    Okay.                                        |
|            | 16  | Q.    Was there anything else that you all         |
|            | 17  | discussed regarding the case or the deposition?    |
|            | 18  | A.    No.                                          |
|            | 19  | Q.    We talked about the documents you            |
|  09:42:44  | 20  | reviewed. Were you ever asked to gather up any     |
|            | 21  | documents in connection with this case?            |
|            | 22  | A.    No.                                          |
|            | 23  | Q.    Were you ever asked to turn over any         |
|            | 24  | e-mails, for example?                              |
|  09:42:53  | 25  | A.    No e-mails.                                  |

```
                 1      Q.    Text messages?
                 2      A.    No.
                 3      Q.    Any documents at all?
                 4      A.    What's App.
09:43:00         5      Q.    What's App messages?
                 6      A.    Yes.
                 7      Q.    Okay.  I guess, what were you told to do
                 8  with respect to these What's App messages?
                 9      A.    Just send the What's App to my legal team.
09:43:11        10      Q.    And it was What's App communications with
                11  whom?
                12      A.    Athina.
                13      Q.    Okay.  And you turned those over to the
                14  legal team?
09:43:22        15      A.    Yes.
                16      Q.    Any other documents that you were asked to
                17  search for?
                18      A.    No.
                19      Q.    Do you think you have e-mails that might
09:43:34        20  be relevant to the claims in this case?
                21      A.    No.
                22      Q.    Or text messages?
                23      A.    No.
                24      Q.    Or any other documents other than the
09:43:42        25  What's App messages?
```

```
              1      A.    No.
              2      Q.    When were you asked to gather up What's
              3  App messages?
              4      A.    I can't recall specifically, but it was
  09:43:58   5  probably about 3 or 4 months ago.
              6      Q.    Okay.  And are there any specific What's
              7  App messages you were asked to look for or did you
              8  just turn over the entirety of the string with
              9  Athina?
  09:44:14  10      A.    No, just the entire string.
             11      Q.    Okay.  What about Teams chats, or anything
             12  like that, were you asked to look for any of those?
             13      A.    No.
             14      Q.    You have Team chats that relate to the
  09:44:37  15  claims in this case, though, right?
             16      A.    No --
             17            MR. GORDON:  Objection to form.
             18            You can answer.
             19      Q.    BY MR. VANDERWOUDE:  Sorry.  So you can
  09:44:46  20  still answer, even when he objects.
             21            So would you mind repeating your answer?
             22      A.    No.
             23      Q.    Thank you.
             24            Do you know what a litigation hold memo
  09:45:01  25  is?
```

|  |  |  |
|---|---|---|
| | 1 | A. No. |
| | 2 | Q. So I guess you don't recall receiving a |
| | 3 | litigation hold memo in connection with this case? |
| | 4 | A. No. |
| 09:45:09 | 5 | Q. Any type of document instructing you not |
| | 6 | to delete or overwrite or destroy potentially |
| | 7 | relevant evidence? |
| | 8 | A. I can't recall. |
| | 9 | Q. Okay. I want to cover a little bit of |
| 09:45:45 | 10 | your background. |
| | 11 | Tell me about your educational background. |
| | 12 | A. So I went to a junior college for a year, |
| | 13 | played volleyball there, and then I transferred up |
| | 14 | here to Utah, went to Utah Valley University for |
| 09:45:58 | 15 | three years but never finished because I started in |
| | 16 | the BPO industry and have been in it ever since. |
| | 17 | Q. Got it, okay. Yeah. So I show you went |
| | 18 | to El Camino College from '94 to '95? |
| | 19 | A. Uh-huh. |
| 09:46:10 | 20 | Q. And you played volleyball there? |
| | 21 | A. Uh-huh. |
| | 22 | Q. Then you transferred to Utah Valley |
| | 23 | University; is that correct? |
| | 24 | A. Uh-huh. |
| 09:46:15 | 25 | Q. Went there for three years. No degree? |