IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| Athina Karahogitis | § | |
| | § | |
| v. | § | Case No. 4:24-cv-00706 |
| | § | |
| TPUSA, Inc. d/b/a Teleperformance USA | § | |
| and Does 1-20 | § | |

### PLAINTIFF ATHINA KARAHOGITIS' REPLY IN SUPPORT OF SECOND MOTION TO COMPEL

Plaintiff, Athina Karahogitis, files this Reply in Support of Her Second Motion to Compel against Defendant, TPUSA, Inc., and would show the Court as follows.

**A.   Ms. Karahogitis did not delay starting discovery; TPUSA did not timely produce documents and insisted that depositions be delayed.**

Contrary to what TPUSA would have this Court believe, Ms. Karahogitis did not delay initiating discovery.  She served discovery requests on TPUSA on October 24, 2024. TPUSA did not begin to produce documents until January 2025, however.  Nor did Ms. Karahogitis delay taking depositions.  TPUSA insisted on deferring depositions until a mediation session scheduled for February 4, 2025, occurred.  TPUSA  also insisted that Ms. Karahogitis' deposition be completed before TPUSA would produce any of its own witnesses.   TPUSA then cancelled Ms. Karahogitis' deposition set for the day after mediation and it was rescheduled for a later date.

Plaintiff's counsel initially offered to present its witness, Miranda Collard, for deposition in March 2025, but the attorney taking that deposition, Gabrielle Wirth, was

**PLAINTIFF'S REPLY IN SUPPORT OF HER SECOND MOTION TO COMPEL – PAGE 1**

in trial for much of March. Ms. Karahogitis' other attorney, Brian Vanderwoude, was prepping for one trial for most of March, in trial in another case for all of April. TPUSA did not finish Ms. Karahogitis' deposition until May. In the interim, TPUSA refused to produce any of its witnesses for deposition until Ms. Karahogitis' deposition was complete.

Plaintiff then took the depositions of Miranda Collard and Will Fritcher in June – the first dates TPUSA made them available. The transcripts of those depositions, which are still not finalized as TPUSA insists on designating pages as confidential, were made available to Ms. Karahogitis' counsel shortly before Ms. Karahogitis' counsel filed the second motion to compel. Hence, Ms. Karahogitis did not unduly delay.

**B.  The Court has already held that TPUSA can, and should, produce documents in the Teleperformance Group's possession and present witnesses that are employed by the global Teleperformance Group.**

In granting Ms. Karahogitis' first motion to compel, the Court already held that TPUSA can, and should, produce documents in the possession of other Teleperformance entities and present witnesses employed by the Teleperformance Group. These issues were raised in Ms. Karahogitis' first motion to compel, which the Court granted – not granted in part, denied in part. Granted.

TPUSA tries to sidestep the Order and claim that it reached out to other entities and responsive documents simply do not exist. In doing so, TPUSA ignores the fact that other entities, including TP Greece, had zero role in Ms. Karahogitis' day-to-day

activities. Smidt Decl. ¶ 3; Sigacheva Decl. ¶ 4. No one has suggested that TP Greece evaluated Ms. Karahogitis. The holding company evaluated her for purposes of issuing stock grants and, the 360° evaluation of Ms. Karahogitis has still not been produced even though <u>it was conducted by TPUSA</u>, not TP Greece or any other entity. That evaluation -- done in 2021 -- incorporated the reviews of individuals employed by multiple Teleperformance entities. See Karahogitis' Decl. ¶ 12; Sigacheva Decl. ¶ 6. Ms. Collard told Plaintiff that she had done exceptionally well with only one critic out of dozens of reviewers from multiple entities. Karahogitis' Decl. ¶ 12. Until at least the end of 2024, all the companies were on the same HR System. Bouklia ¶4-5. Yet, that review, and the reviews Ms. Collard testified she <u>did complete,</u> have never been produced. While counsel claims they do not exist, that is not what the evidence shows.

As to Joao Cardoso, there can be no dispute he also supervised and directed Ms. Karahogitis and that Ms. Karahogitis reported to him in her role as Chief Client Officer of EMEA beginning in November 2022. He is identified in TPUSA's disclosures as a person with knowledge of relevant facts. And, TPUSA's initial disclosures stated that he, along with numerous other Teleperformance Group' was under the control of TPUSA's counsel.

Despite previously indicating that Mr. Cardoso (and others) are subject to TPUSA's control, TPUSA now contends it cannot, and is not obligated to, produce them because they are not "managing agents" of TPUSA. The burden to prove managing agent

**PLAINTIFF'S REPLY IN SUPPORT OF HER SECOND MOTION TO COMPEL – PAGE 3**

status, "is a modest one, and at least at the discovery stage, all doubts are to be resolved in favor of the party seeking the depositions. This is particularly true where the party seeking discovery has had less than complete discovery on the issue of the witness's status within the corporation. Thus, courts have concluded that if there is at least a "close question" as to the managing agent status of a potential witness, doubts should be resolved in favor of allowing the deposition . . . ." *Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 632-33 (D. Idaho 2012), aff'd, 290 F.R.D. 508 (D. Idaho 2013) (internal quotation marks and citations omitted). The paramount inquiry is whether the witness is likely to identify with the interests of the employer. *Id.*

Here, as to Ms. Karahogitis specifically, the privilege log confirms that Ms. Collard relied upon Mr. Cardoso's (unjustified) complaints that Ms. Karahogitis failed to make herself available on dates she was scheduled to be at clients, and in one case was in the hospital. The evidence before the court regarding the duties, responsibilities, and authority of the witnesses tends to show that they are likely to identify their interests with Teleperformance. Moreover, Teleperformance has not adduced any evidence to support a different outcome. Under these circumstances, the court should find that, at least for purposes of employing a notice of deposition, Ms. Karahogitis has met her limited burden to show that the witnesses are officers, directors, or managing agents for Teleperformance. *See Calderon*. Pragmatic considerations further support this result. See *Bon Air Hotel, Inc. v. Time, Inc.*, 376 F.2d 118, 121-22 (5th Cir. 1967).

**PLAINTIFF'S REPLY IN SUPPORT OF HER SECOND MOTION TO COMPEL – PAGE 4**

C.  **TPUSA's arguments as to why it need not search for documents relating to Ms. Karahogitis' cancer or epilepsy or related medical conditions or need for accommodation are baseless.**

TPUSA argues that it should not have to search for records relating to Ms. Karahogitis' epilepsy or cancer because Ms. Karahogitis allegedly did not produce medical records that she had ever had a surgery or that she had a medical procedure related to her cancer diagnosis. But that is not true. On March 26, 2025, Plaintiff produced over two dozen documents, including a medical report signed by Dr. Med. Ioannis Velentzas, Neurologist, Psychiatrist, Dir. Dpt. Neurology, Clinical Neurophysiology, IASO Hospital, Athens stating

> "Mrs Karahogitis suffers from idiopathic myoclonus epilepsy, but her seizures started at a later age at the end of 2020 with loss of conscience, probably due to longer screenexponation [exposure] during the lockdown. The treatment with levatiracetame was successful. We suggested her regular and enough sleep at least 8 hours and intermittent work in front of the screen with mandatory breaks of ten minutes every hour. If due, for example to travel conditions, sleep deprivation occurs, sleep has to be compensated even during the day. This kind of epilepsy does not impair mental ability and concertation at all, if medical advice is followed."

Ms. Karahogitis also produced biopsy results confirming her cancer and EKG readings confirming her seizures. Supp Karagohiti Decl at 7. Defendant does not cite to any case stating that the disabled must produce the records relating to all operations relating to the disability in a discrimination case. Plaintiff provided pictures to Ms. Collard of her shunts at the time of her surgery [Collard Tr: 26:18-27:19]. Moreover, Ms. Collard testified she knew Ms. Karahogitis was a cancer survivor "early on" before Ms.

Karahogitis reported to her and she knew of the breast reconstruction as of October 2022, at a time when she was supervising Plaintiff. [Collard Tr: 24:3-26:13]. She also testified that may have been at meetings with Ms. Karahogitis where she could see that Ms. Karahogitis was unable to use her arms because she was bandaged after the operation [Collard Tr: 28:9-20]. Ms. Collard was not only told in 2022 about the need for the reconstructive surgery because of burning leakage in Ms. Karahogitis' chest, but knew that Ms. Karahogitis postponed the surgery recommended in May 2022 because her promotion had just been announced and it was important to deal immediately with some of the key clients. Ms. Collard also admitted that she received pictures of the October 2022 reconstructive surgery.

TPUSA's knowledge of both disabilities and related medical conditions have also been verified under oath by numerous other Teleperformance employees including the contemporaneously filed declaration of. Marieke Smidt (breast reconstruction in October 2022 ¶ 7 and epilepsy ¶ 8), the declarations filed in opposition to the motion for summary judgment, David Minkus (cancer, double mastectomy ¶ 5), Skurzewski (epilepsy ¶ 8), Sigacheva , epilepsy ¶ 8, Bouklia (epilepsy ¶¶ 6 to 9)

This point is irrelevant in any event. The law is well settled that an employer's duty to accommodate arises when it has knowledge and no magic words are required for an employer to have an obligation to accommodate and that an employee cannot discriminate against persons with disabilities. TPUSA's "reliability" explanation appears

to be a direct reference to her disability as the only documents produced to support this are failures to attend when she had prescheduled client calls approved by Ms. Collard and an email where Plaintiff asked to reschedule because she was in the hospital. *See* Collard Transcript at 111:8-112:18; 114:11-115:13; 120:23, Ex 21. 230:19-232:23.

**D.   TPUSA refuses to produce documents that refreshed Ms. Collard's memory prior to her deposition about the events at issue.**

Federal Rule of Evidence 612(b) provides that an "adverse party is entitled to have the writing" used to refresh a witness's recollection. Ms. Karahogitis can use that writing "to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony. If the producing party claims that the writing includes unrelated matter, the court must examine the writing in camera, delete any unrelated portion, and order that the rest be delivered to the adverse party. Any portion deleted over objection must be preserved for the record."

While the "Fifth Circuit has yet to articulate a framework for analyzing the intersection of Rule 612 and the attorney and work-product privileges," "it is clear from the text of Rule 612 that the rule allows a writing to be disclosed to opposing counsel only if the writing actually refreshed the witness's memory and, in the case of documents reviewed before testifying, only after the Court makes a determination that 'justice requires' the disclosure." *Shaffer v. Perry's Rests., Ltd.*, No. SA-16-CV-01193-FB, 2018 U.S. Dist. LEXIS 180543, at *3 (W.D. Tex. Oct. 22, 2018). Ms. Collard testified she read emails and PowerPoints in preparation for her deposition which refreshed her recollection as to

what has happened in relation to this case. Counsel refused to produce them. [Collard Tr: 20:23-22:7]

E. **TPUSA refuses to provide any support documents to substantiate the shifting explanations for her termination or explain how document that disappeared despite the fact that litigation with plaintiff was anticipated.**

Starting two weeks before her termination, in November 2023, the privilege log reveals that TPUSA attorneys Leslie Miller, John May, Sonia Cheurfa and outside counsel and non-TPUSA executives Augusto Martinez Reyes, Joao Cardoso, Augustin Grisanti, Kelly Grypari, Jessica Keenen and Sarah Miller  Alan Winters, Global HR, Shay Kushman, and Matthew Cuthill, TP Netherlands, had at least 28 exchanges relating to Athina Karahogitis in anticipation of litigation. Yet TPUSA suggests that none of them, even the three in-house lawyers, maintained the back-up data that Ms. Collard was allegedly using to justify Plaintiff's termination. Ms. Collard testified she did not verify the underlying data but it is probably in her emails and she does not normally delete emails. At best, a complete search has not occurred; alternatively, there was spoliation of evidence or it never existed.

i. *Documentation as to why Ms. Karahogitis was not paid her commissions has not been produced.*

Plaintiff had been insisting she was entitled to additional commissions since the summer of 2022. "I want to say she was fighting that battle with TP Greece in the summer of 2022." [Collard Tr: 31:12-25]. Despite the documentation (which was not produced by TPUSA) which clearly states that Ms. Collard's approval was required for Plaintiff to

receive her commissions, Ms. Collard testified her approval was not necessary to process the commissions [Collard Tr: 32:1-13]. Ex. 20. Matthew Cuthill of Teleperformance Netherland explained how the payout for commission that were earned as of December 30, 2022 would work. [Collard Tr: Ex 20, 209:24-211:25] Collard approved Cuthill's description as to how the commissions would be paid. *Id.*

Now Ms. Miller states that she contacted Mr. Cuthill who gave her certain responsive documents, but none of his emails were produced, not even his copies of the emails Plaintiff produced. Notably, Mr. Cuthill is listed as someone who was consulted in connection with Plaintiff's termination in anticipation of litigation. Clearly neither his emails, Ms. Collard's nor Plaintiff's emails have been reviewed for relevant documents. Thus, Defendant has not fully complied with the Magistrate's Order.

> ii.   *Failure to Produce Relevant Video Recordings*

Plaintiff requested a number of video recordings including the January 2022 meeting where her move to the USA was first discussed and all meetings she attended which would include the January 19, 2021 CEO update described by David Minkus. TPUSA produced one June 2022 recording. As indicated in the attached Supplemental Declaration of Maria Sigacheva, the recordings are available to anyone at any of the Teleperformance entities upon request. *Id.* at ¶¶ 3-5. Indeed, Rebeca Boletti's existence is clearly known by TPUSA as she is featured as the Marketing Person responsible for the one recording TPUSA produced. Plaintiff requested copies of all recordings at which she

was presented which include the January 19, 2021 Global CEO Webcast referenced by David Minkus at ¶ 15, the CEO Webcast in January 2022 where Plaintiff's move to the USA was disclosed, and the CEO Webcasts for July 2022 through November 2023. None have been produced although they are easily accessible. *Id.* Sigacheva Supp. Decl. ¶ 3-5.

### iii. *Failure to Produce Documents Related to the Cost Optimization.*

The cost optimization exercise allegedly started in July of 2022 **[Collard Tr: 34:15-25; 35:9-36:6]**. Plaintiff's position was eliminated in September 2023, a year after the Deputy CEO of the parent company Bhupender Singh mandated cost reductions. Ms. Collard "likely" kept the documents relating to the cost optimization exercise in her emails" **[Collard Tr: 37:9-12]**. The CFO of TPUSA, Akash Pugalia, helped her with the costs optimization projects. **[Collard Tr: 37:13-38:11]**. No explanation has been given as to what happened to the cost optimization documents. Failure to search or spoliation?

Other documents which should have been produced with respect to TPUSA 250 are missing. KSAT is a reported matrix from external client satisfaction surveys. **[Collard Tr: 38:7-22].** These surveys were kept for at least ten years and used by all of Collard's team and those they worked with. Karahogitis Supplemental Decl. ¶ 9.

### iv. *Documents Relating to What Happened with Ms. Karahogitis' Clients – Identity of Athina's Replacement*

When Janine Woelki was fired from TP Germany, and Plaintiff took over the role of EMEA Chief Client Officer – there was a chart made to show who replaced her with respect to her client assignments. Karahogitis Supplemental Decl. ¶ 5 Exhibit 10.

PLAINTIFF'S REPLY IN SUPPORT OF HER SECOND MOTION TO COMPEL – PAGE 10

According to Ms. Collard, a chart that describes who was taking over Plaintiff's clients exists.  It has not been produced. **[Collard Tr:  186:6-16]**  While TPUSA argues without evidence that the Vertical Presidents replaced Plaintiff, Ms. Collard testified that "<u>only a handful</u>" of Plaintiff's clients were assigned to the verticals – the majority were assigned elsewhere.  Thus, the comparators that Defendant alleges took Plaintiffs position did not and the assignment list must be produced.

## RECOMMENDED SOLUTION

Given TPUSA's incomplete descriptions of where, who, and what documents they looked for, the Court should order it to provide a further description including a listing of the database, emails or other databases and the search terms.  Given that TPUSA has not provided foundation for any of the statements in Collard's and Sedlacek Affidavits in support of the summary judgment, Plaintiff's motion to compel should be granted and TPUSA should be ordered to produce the documents Collard described in her deposition but did not produce as well as the video recordings.  While Plaintiff will move as expeditiously as possible, realistically trial should be continued for 60-90 days to allow for completion of this discovery to allow production of the records which support these statements. Consideration of TPUSA's motion for summary Judgment should likewise be continued to allow for further production, briefing, and depositions to set forth in the moving papers.

**PLAINTIFF'S REPLY IN SUPPORT OF HER SECOND MOTION TO COMPEL – PAGE 11**

Dated: July 17, 2025.

Respectfully submitted,

/s/ Brian Vanderwoude
J. Brian Vanderwoude
Texas Bar No. 24047558
**DORSEY & WHITNEY LLP**
200 Crescent Court, Suite 1600
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile
vanderwoude.brian@dorsey.com

and

Gabrielle M. Wirth
Admitted pro hac vice
**DORSEY & WHITNEY LLP**
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626-7655
(714) 800-1400 Phone
(714) 800-1499 Facsimile

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2025, I submitted the foregoing document with the clerk of the United Stated District Court for the Northern District of Texas, Fort Worth Division, using the electronic case filing system of the Court, serving all counsel of records in a manner authorized by the Federal Rules of Civil Procedure 5(b)(2).

/s/ Brian Vanderwoude
J. Brian Vanderwoude